UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 3:11-CV-00803-JJB-SCR |
| | : | |
| 9.345 ACRES OF LAND, MORE OR | : | |
| LESS, SITUATE IN IBERVILLE | : | |
| PARISH, STATE OF LOUISIANA, AND | : | |
| SIDNEY VINCENT ARBOUR, III, *et al*. | : | |
| *Defendants*. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL THE DEPOSITION OF MICHAEL J. KRAINAK AND
TO DISOVER RECORDS AND COMMUNICATIONS OF THE UNITED STATES
WITH REGARD TO KENNETH L. BECKMAN, INTERNATIONAL
GAS CONSULTANTS, AND GEOSTOCK U.S., L.L.C**

Defendants A. Wilbert's Sons, L.L.C., and the Adams Royalty Group (collectively,

"Defendants") ask this Court to take the extraordinary step of compelling (i) the deposition of

one of the United States' attorneys, Michael J. Krainak, and (ii) the discovery of non-

discoverable and protected information related to the United States' experts in this case.  Dkt.

157.  Such a request is made even more extraordinary by the fact that there were no valid

outstanding requests for production of documents or notices of deposition on which Defendants

could seek such relief at the time that they filed the motion.[1]  Defendants' Motion to Compel is,

therefore, not ripe for review.  Aside from that inherent defect, Defendants have not met the

stringent tests for deposing an attorney or for discovery of protected information.  Defendants'

Motion to Compel is wholly without merit and should be denied.

---

[1] On the afternoon of Friday, September 6, 2013, Mr. Craig, counsel for Defendants, emailed to counsel for the
United States a copy of a subpoena for Mr. Krainak's deposition and the production of documents, with a subpoena
for a Rule 30(b)(6) deposition and the production of documents addressed to the United States.  They are attached as
Exhibit 1.  The subpoenas were issued by this Court.  The subpoena to Mr. Krainak has not been served.  The
subpoena to the United States was served moments before the filing of this Opposition.  The United States reserves
the right to object to the subpoenas or to Move to Quash.

I.       **Introduction**

The United States recently filed a Motion for Modification of the Amended Scheduling Order supported by a brief declaration of Michael Krainak, counsel for the United States.  This Motion was necessitated by the fact that Kenneth Beckman, one of the key expert witnesses to the United States' case in chief, provided an expert report that, unbeknownst to the United States, contained an unsupported and erroneous expert opinion on a central issue in this case which Mr. Beckman has since recanted at his deposition on July 12, 2013.  Mr. Beckman further stated at his deposition that he did not reveal to the United States the facts that caused him to recant his testimony because he felt constrained by an undisclosed confidentiality agreement with Defendant PL Midstream (PLM), the lessee-operator of the storage facility at Bayou Choctaw. Mr. Krainak's subsequent declaration in support of the Motion for Modification of the Amended Scheduling Order provided context with respect to the United States' retention of Mr. Beckman and the reasons that Mr. Beckman provided for recanting key expert opinions.  Because of Mr. Beckman's disavowal of his expert opinion, the United States has a duty to supplement the inaccurate information provided by its expert witness with correct information, and its other experts must amend and supplement their expert opinions to the extent that they relied on the recanted opinion of Mr. Beckman.  Fed. R. Civ. P. 26(e)(2).

As a result of the United States' Motion, Defendants now seek to compel the deposition of Mr. Krainak, although no subpoena for his deposition had been issued at the time the motion was filed.  Thus, Defendants' Motion to Compel Mr. Krainak's deposition is unripe for resolution or at least premature.  Furthermore, the motion to compel the production of documents is likewise premature, since no subpoena was pending at the time the Motion to Compel was filed.   Furthermore, even if this motion to compel were ripe for resolution, Defendants' Motion

to Compel should be denied on the merits.  As the case law makes clear, requests to take the deposition of opposing counsel are disfavored and only allowed upon a stringent showing that (1) no other means exists to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case.  *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208-209 (5th Cir. 1999).  Defendants have failed to make the showing required to allow them to take Mr. Krainak's deposition.  Since Mr. Krainak's declaration provided information largely duplicative of information provided by Mr. Beckman under oath in his deposition, other means exist to obtain the information that they seek from Mr. Krainak.  Furthermore, the information in Mr. Krainak's declaration does not constitute the broad waiver of work product-protected communications between counsel for the United States and Mr. Beckman, IGC, and Geostock as Defendants claim.  And contrary to their assertions, the information that they seek from Mr. Krainak is not crucial to their preparation in this case.  The statements made by Mr. Krainak in his brief declaration are not crucial to the reason why the United States filed the Motion for Modification of the Amended Scheduling Order.  While Defendants seek to convince this Court that the discovery they seek is critical to their ability to respond to the United States' motion for modification of the scheduling order, they have already responded to the United States' motion.  *See* Dkts. 151 & 160.  Clearly, they did not need the requested discovery prior to responding to the United States' motion for modification.  That is because the facts that require the United States to supplement its expert witness submissions and substitute experts are established in Mr. Beckman's sworn testimony in his July 12, 2013 deposition.  Moreover, Mr. Krainak's declaration did not provide factual information relevant to the central issues of this litigation—the appropriate valuation of the subject property at issue.

3

Defendants likewise have not met the stringent test for requiring production of the work-product protected documents in the possession of Plaintiff's counsel, Mr. Beckman, IGC, and Geostock, since they have not shown substantial need for the materials to prepare their case and the fact that they cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii),; *In re International Securities Systems & Controls Corp. Securities Litigation,* 693 F.2d 1235, 1239-40 (5th Cir. 1982); *FTC v. U.S. Grant Resources, LLC*, No. Civ.A. 04-596, 2004 WL 1444951, at *10-11 (E.D. La. June 25, 2004). They are also not entitled to production of work product materials reflecting the mental impressions, conclusions, opinions, or legal theories of counsel for the United States, for which the protection is almost absolute. Fed. R. Civ. P. 26(b)(3)(B); *In re International Securities Systems & Controls Corp.*, 693 F.2d at 1240. Defendants' Motion to Compel should be denied.

## II.   Facts

At the time that Defendants filed the motion to compel, no subpoena for Mr. Krainak's deposition or for the production of documents had been issued by any court. Defendants subsequently obtained a subpoena from the U.S. District Court for the District of Columbia dated August 22, 2013 that sought the production of documents in the possession of the United States, Mr. Beckman, IGC, and Geostock relating to their communications with respect to this case. However, at the status conference before this court on August 28, 2013, counsel for Defendants withdrew that subpoena. On September 6, 2013, Defendants emailed a subpoena for Mr. Krainak's deposition and the production of documents, and a subpoena to the United States for a Rule 30(b)(6) deposition and 46 different categories of documents relating to communications between the United States and its experts and among counsel for the United States in any way relating to the experts. *See* Ex. 1. Among other things, Defendants seek:

4

- All internal communications between employees of the Department of Justice that in any way relate to retention of or the work performed by Mr. Beckman, IGC, or Geostock on behalf of the United States.  Document Requests Nos. 14, 15, 28, 29, 43, and 44.

- Any documents that in any way relate to work done by Mr. Beckman, IGC, or Geostock at the request of the United States.  Document Requests Nos. 4, 18, and 32.

- Any drafts or mark-ups of reports prepared by Mr. Beckman, IGC, or Geostock for the United States.  Document Requests Nos. 8, 9, 22, 23, 36, and 37.

As the United States explained in its Motion for Modification of the Amended Scheduling Order, a key aspect of the valuation of Cavern 102, the property of the Defendants at issue in this case, is its storage capacity. Dkt. 145, U.S. Memorandum in Support of Motion to Modify at 4.  The United States hired Mr. Beckman to provide an expert opinion on this storage capacity based on the available data.  As Mr. Beckman stated in his deposition, in its application to the Federal Energy Regulatory Commission (FERC), Defendant PLM stated that Cavern 102 would have a capacity of 7.2 billion cubic feet (bcf) of working gas, and Mr. Beckman used that 7.2 bcf figure in the expert report that he prepared on behalf of the Department of Justice. Deposition at 9:6-11 (Exhibit 2 to United States Motion for Modification of the Amended Scheduling Order).  However, Mr. Beckman stated in his deposition that he now believes that the correct working gas capacity figure is closer to 5 bcf.  *Id.* at 9:12-14.  Essentially, Mr. Beckman repudiated a key aspect of his expert opinion relevant to the appropriate valuation of Cavern 102, the property at issue in this just compensation litigation.  And it is this change in Mr. Beckman's expert opinion from what he stated in the Expert Report that he provided in this case that is the reason for the United States' request that the court modify the amended scheduling order.

Mr. Krainak's brief declaration submitted in support of the United States' Motion for Modification of the Amended Scheduling Order and Status Conference provides limited background information related to Mr. Beckman's recantation of his expert opinion, much of

which had been previously stated by Mr. Beckman under oath in his deposition. An examination of the content of Mr. Krainak's declaration shows that the information that he provided regarding contacts with Mr. Beckman was largely duplicative of information conveyed by Mr. Beckman in his deposition or set forth in other sources available to Defendants:

- Paragraph 2 of Mr. Krainak' declaration states that at their first meeting, Mr. Beckman told Mr. Krainak that he and his company IGC had performed a market power study for Defendant PLM based solely on public information in support of PLM's FERC application. Mr. Beckman told Mr. Krainak that he had no confidential information relating to PLM and no continuing relationship with PLM that would prevent him from working for DOJ as an expert. Krainak Decl. at Paragraph 2. Mr. Beckman provided essentially the same information in his deposition. Beckman Deposition at 12:2-5.

- Paragraph 3 of Mr. Krainak's declaration states that Mr. Beckman was retained to provide expert reports and technical assistance, and summarizes the contents of Mr. Beckman's expert report. Mr. Beckman's expert report itself provides this information.

- Paragraph 5 of Mr. Krainak's declaration states that U.S. counsel met with Mr. Beckman on July 10, 2013 to prepare for his July 12 deposition, and describes how Mr. Krainak explained the fact that a subpoena had been issued to him and the procedures that counsel for the parties had agreed on for responding to expert subpoenas. The paragraph contains no information regarding substantive communications between U.S. counsel and Mr. Beckman.

- Paragraph 6 of Mr. Krainak's declaration states that on July 10, 2013, Mr. Beckman disclosed for the first time that he had a confidential relationship with PLM that had prevented him from providing accurate answers to DOJ regarding Cavern 102. Mr. Krainak explains that DOJ lawyers had, prior to July 10, 2013, been questioning the basis for Mr. Beckman's opinions as a result of rebuttal work being performed by U.S. expert Geostock, to which Mr. Beckman provided vague or unreasoned answers. In his deposition, Mr. Beckman confirmed under oath that, contrary to his earlier representations he and IGC had confidential information from PLM that could affect his opinion. Beckman Deposition at 12:3-5, 17-22. Mr. Beckman also stated in his deposition that it was not until he received the subpoena duces tecum from PLM that required that he produce documents that he told the United States that he had confidential information from Defendant PLM. Beckman Deposition at 13:18-21. As a result of his actions, Mr. Beckman stated that he had failed his client the United States. Beckman Deposition at 13:3-6, 21-24.

- Paragraphs 6 and 7 of Mr. Krainak's declaration also stated that when he and Mr. Beckman spoke on July 10, 2013, Mr. Beckman stated that receipt of the subpoena relieved him of responsibility under his undisclosed agreement with PLM because the

subpoena of documents relating to his communications with PLM would bring "all of these facts" to the surface.  In his deposition, Mr. Beckman stated that when he received the subpoena duces tecum, he "couldn't pretend anymore" that he did not have confidential information from PLM, and now he had to tell Justice and could not protect the confidentiality.  Deposition at 13:18-24.

- Paragraph 6 of Mr. Krainak's declaration also states that at the July 10, 2013 meeting, Mr. Beckman provided documents that he said indicated the baselessness of PLM's filing, and that he believed additional documents existed in this regard.  The documents that Mr. Beckman provided to counsel for the United States have since been provided to counsel for PLM, and counsel for PLM has released them to the other parties to the case and waived any claims of confidentiality as to the documents. Email from S. Adler to DOJ attorneys, et al.  Ex. 2.

- Paragraphs 6 and 8 of Mr. Krainak's declaration state that Mr. Beckman told Mr. Krainak that he had accepted the working and base gas calculations in the PLM FERC application so as not to breach his confidential relationship with PLM.  Mr. Beckman explained this same point in his deposition.  Deposition at 9, 13, 25-26.  In Paragraph 8 of Mr. Krainak's declaration, he also states that Mr. Beckman said that the working gas number in PLM's FERC application has no support.  Mr. Beckman explained this point in more detail in his deposition.  Deposition at 9, 25-26.

Mr. Krainak's declaration contains only three sentences regarding the United States' retention of Geostock and its work.  Krainak Declaration, ¶¶ 4, 6.  Mr. Krainak states that Geostock was hired to assist DOJ in reviewing Defendants' expert reports.  ¶ 4.  He states that it was in working with Geostock that the United States learned of the lack of support for PLM's FERC application numbers.  ¶¶ 4, 6.  The information regarding the lack of support for PLM's FERC application numbers is provided in Geostock's rebuttal report.  No communications between counsel for the United States and Geostock are referred to in Mr. Krainak's declaration.

### III.   Argument

#### A.  Defendants' Motion is Not Ripe Because No Subpoena was Pending for Either Mr. Krainak's Declaration or the Production of Documents at the Time the Motion was Filed.

Defendants' Motion to Compel is premature and not ripe for consideration because no valid discovery request or subpoena was pending at the time that they prepared their Rule 37

Certificate or when they filed their Motion.  The fact that Defendants obtained subpoenas for the United States' and Mr. Krainak's deposition and the production of documents that they emailed to Mr. Krainak on September 6, 2013, and only one of which has been served, does not change that fact.  Without issuance of a subpoena for a deposition or requests for specific documents, there was no identification of the particular documents that Defendants seek.  Fed. R. Civ. P. 37(a)(3) provides for motions to compel when a party has not responded to specific discovery requests that have been propounded by another party.  Defendants had neither issued a subpoena for Mr. Krainak's deposition nor for documents at the time they allegedly sought a Rule 37 conference, so there were no specific discovery requests outstanding for the parties to discuss. The Fifth Circuit has recognized a requesting party's right to file a motion to compel under Rule 37(a)(3)(B) when "a party fails to respond to a discovery *request*."  *Sweet Lake Land & Oil Co., LLC v. Exxon Mobil Corp*, 09-CV-1100, 2010 WL 5067827, at *1 (W.D. La. Dec. 7, 2010) (emphasis added); *see also Lemoine v. Lexington Ins. Co.*, CIV.A. 08-4513, 2009 WL 1808470, at *1 (E.D. La. June 24, 2009) (defendant's motion to compel was proper because plaintiff failed to respond to defendant's propounded interrogatories and requests for documents).  In this instance, without a discovery request pending, Defendants' Motion to compel Mr. Krainak's deposition and the production of documents is simply unripe.  *Crow v. Corpper*, No. 10-1779, 2012 WL 4023777 (W.D. La. Sept. 12, 2012) (only if the opposing party fails to respond to discovery requests may the party seeking discovery file a motion to compel); *Rhea v. Uhry*, No. 3:05-CV-189, 2006 U.S. Dist. LEXIS 74917, at *1 (D. Conn. October 16, 2006); *see also Tucker v. American International Group, Inc.*, 281 F.R.D. 85, 95 n.20 (D. Conn. 2012) ("[P]laintiff's current motion is arguably 'not ripe' in that there must first be a formal discovery request and a failure to respond before a motion to compel is appropriate.").  As the court in *Rhea* explained,

"[T]he discovery rules are not merely technical requirements.  The defendant's answers and objections may narrow the issues to be decided by the court, and the court cannot decide those issues without having before it each party's position as to each specific request."  *Rhea*, 2006 U.S. Dist. LEXIS 74917, at *1.  Likewise, this court does not have the opportunity to review specific requests for production of documents and arguments by the parties about those specific requests, since no production request was pending when the parties briefed this motion.  The parties have not provided specific briefing as to discovery requests promulgated by Defendants.

> **B.   Even if this Motion Were Ripe for Review, Defendants Have Failed to Meet the High Bar for Requiring the Deposition of Michael Krainak, Counsel for the United States in this Litigation**

Even if this motion were properly ripe for review, Defendants' Motion to Compel the deposition of the United States' counsel should be denied on the merits.  Based on the limited information provided by Mr. Krainak in his declaration, Defendants seek to take Mr. Krainak's deposition.  Federal courts disfavor the practice of taking the deposition of a party's attorney; the practice should be employed only in limited circumstances.  *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999); *FTC v. U.S. Grant Resources, LLC*, No. Civ.A. 04-596, 2004 WL 1444951, at *10 (E.D. La. June 25, 2004) (courts take a critical view of requests to seek the deposition of opposing counsel because they present a unique opportunity for harassment). The practice of calling opposing counsel is to be discouraged in all instances, save those where no other avenue is available.  *Elmwood Village Center v. Kmart Corp.*, No. Civ.A. 94-2840, 1994 WL 500945, at *1 (E.D. La. Sept. 9, 1994), citing *Shelton*, 805 F.2d at 1327.  As the Court stated in *Shelton*:

> The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.

805 F.2d at 1330.

*Shelton* is the leading case establishing the standard for allowing the deposition of opposing counsel. *Anserphone of New Orleans, Inc. v. Protocol Communications, Inc.*, No. Civ.A. 01-3740, 2002 WL 31016572, at *1 (E.D. La. Sept. 10, 2002); *see Nguyen*, 197 F.3d at 208-209 (analyzing request to depose defense counsel using *Shelton* criteria where attorney-client privilege was waived); *FTC v. U.S. Grant Resources, LLC*, 2004 WL 1444951, at *9-11 (applying *Shelton* criteria to deny motion to take deposition of U.S. counsel).

In *Shelton*, the Court held that a deposition of opposing counsel should be limited to those circumstances in which a party seeking the deposition shows that: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d at 1327 (citation omitted).

1. Defendants Cannot Show that No Other Means Exists to Obtain the Information That They Seek Other Than By Deposing Mr. Krainak

Regarding the first step of the *Shelton* test, Defendants cannot show that no other means exist to obtain the information than to depose Mr. Krainak.  Defendants claim that they seek to obtain Mr. Krainak's deposition because of his involvement in communications concerning Mr. Beckman's prior relationship with PLM and Mr. Krainak's knowledge of the conflict that existed between Mr. Beckman and PLM.  Memorandum in Support of Motion to Compel at 4. However, Defendants already had the opportunity to depose Mr. Beckman on this point and, as indicated in the Statement of Fact above, he confirmed under oath what Mr. Krainak

10

subsequently stated in his brief declaration.  All of the information Mr. Beckman provided to counsel for the United States regarding whether he had confidential information from PLM relating to his work on behalf of the United States and when he provided this information to U.S. counsel was provided by Mr. Beckman under oath during his July 12, 2013 deposition. Defendants may question him further during the deposition that they have scheduled for September 26, 2013.  Therefore, Defendants have not shown that they have no other means to obtain the information regarding U.S. counsel's knowledge of Mr. Beckman's potential conflicts.

Furthermore, Defendants have failed to clearly articulate the communications between Mr. Krainak and the United States' rebuttal expert Geostock on which they seek to depose Mr. Krainak other than by stating that they seek information on the "new opinion" of Geostock.  But the expert rebuttal opinion prepared by Geostock clearly sets out their expert opinions that differ from Mr. Beckman's now-repudiated expert opinion.  Defendants will have the right to take appropriate discovery of Geostock regarding the bases for its expert opinions.  Mr. Krainak's declaration contained no information regarding communications between counsel for the United States and Geostock justifying discovery into such communications.  Therefore, Defendants have failed to meet the first step of the *Shelton* test by failing to show that no other means exist to obtain the information than by deposing Mr. Krainak.[2]

---

[2]  *Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir. 1989), cited by Defendants, is distinguishable on the ground that in that case plaintiff's argument in response to a statute of limitations defense was that his counsel informed him of the factual basis of his claim within the limitations period.  The attorney's statement to plaintiff was the key factor in determining whether plaintiff's case was timely.  *See Elmwood Village Center v. Kmart Corp.*, 1994 WL 500945 at 1.  Furthermore, even in allowing discovery, the Court of Appeals narrowed the scope of inquiry that had been allowed by the District Court, allowing only a "cabined inquiry" on specific questions relating to the statute of limitations.  *Conkling* at 435.  In *Nguyen v. Excel Corp.*, plaintiffs were allowed to take limited depositions of defendants' counsel because the only other source for the relevant information that they sought were executives of the defendant corporation, and the executives had offered only vague and non-specific explanations in response to plaintiffs' questions about their good faith beliefs.  197 F.3d at 209.  Neither case is comparable to the situation here.

11

2.  <u>Information Sought from Mr. Krainak Is Protected Work Product</u>

With respect to the second element of the *Shelton* test, most of the information sought from Mr. Krainak is protected work product.  In *Shelton*, the information sought by plaintiffs and which the Circuit Court ultimately held was not discoverable was protected attorney work product.  805 F.2d at 1328, 1330.  Mr. Krainak has only provided limited information regarding discrete communications with Mr. Beckman: regarding potential conflicts that Mr. Beckman may have at the time he was hired; questions regarding Mr. Beckman's opinion in light of Geostock's rebuttal report; and Mr. Beckman's explanation on July 10, 2013 that he had failed to disclose to the United States the fact that he had confidential information, and that he had to disavow his expert opinion on a key issue.  This information has been corroborated by Mr. Beckman under oath in his deposition.  Communications between counsel for the United States on other matters constitute protected work product.    Fed. R. Civ. P. 26(b)(4)(C).

3.  <u>Defendants Have Not Established that the Information that They Seek Through Mr. Krainak's Deposition Is Crucial to the Preparation of Their Case</u>

Finally, Defendants have also failed to establish the third element of the *Shelton* test, that the information sought through a deposition of opposing counsel is crucial to the preparation of their case.  Defendants have made no argument as to how the information that they seek through the deposition of Mr. Krainak is relevant to the ultimate issue to be tried in this case—the amount of just compensation to be paid for the property at issue.  Defendants claim that communications between Mr. Krainak and Mr. Beckman and Geostock are directly relevant to the United States' Motion to Modify the Amended Scheduling Order, and that by submitting a declaration Mr. Krainak has become a fact witness on issues critical to the United States Motion. Memorandum in Support of Motion to Compel at 2.  However as already stated, the reason the

United States seeks to modify the court's schedule in this case is that, unbeknownst to the United

States, its expert Beckman provided an unsupported and erroneous opinion on a central issue in

this case that he recently recanted.  Mr. Krainak's declaration merely provides information that

reiterates information provided by Mr. Beckman in his deposition or is found in other sources

available to Defendants.[3]  To the extent that Defendants have further questions on Mr.

Beckman's disavowal of his expert opinion and his earlier representations to the United States

about not having a conflict that would preclude his work as an expert, Defendants may further

question Mr. Beckman on those issues at the deposition that they have scheduled for September

26, 2013.  And defendants may still depose Geostock on its expert report in due course,

exploring all matters permitted under Fed. R. Civ. P. 26.[4]

    Therefore, Defendants have failed to establish the grounds for taking the deposition of

U.S. Counsel Michael Krainak under the stringent test established in *Shelton*.  Their request to

take the deposition of Mr. Krainak -- should a proper subpoena issue -- should be denied.[5]

---

[3]  In fact, since the information in Mr. Krainak's declaration is available from other sources or unnecessary to the determination of the Motion to Modify the Amended Scheduling Order, the United States would have no objection if the Court were to strike Mr. Krainak's declaration in its resolution of this Motion to Compel.

[4]  This case is clearly distinguishable from *Rainbow Investors Group v. Fuji Trucolor Missouri, Inc.*, 168 F.R.D. 34 (W.D. La. 1996) on which Defendants rely.  The plaintiffs in *Rainbow Investors Group* asserted attorney-client privilege to block the deposition of their attorney, rather than the work product privilege at issue here.  Plaintiff's counsel Delauney had, prior to the time when litigation was pending or even anticipated, played a key role in negotiating a sales agreement with a third party on behalf of plaintiff which was key to defendants' defenses and counterclaims.  168 F.R.D. at 37.  The court held that insofar as Delauney was acting more as a negotiator in a business transaction than as plaintiffs' attorney, any knowledge that Delauney had on the negotiations was discoverable.  *Id.*  The court further found that the work product doctrine was inapplicable in the case, since the focus of defendants' inquiry with respect to Delauney was on events that occurred well before litigation was anticipated.  *Id.*  The court also found that defendants had demonstrated an effort to obtain the information from other sources, but that key details regarding the negotiation of the third party sales agreement could only be provided by attorney Delauney.  *Id.*  This is clearly very different from the situation in this case.

[5]  The United States notes that briefs filed by Defendants in this case contain numerous factual assertions unsupported by citations to affidavits or other documents, suggesting that counsel signing the briefs is the source for the information.  For example, the Response of Boardwalk Louisiana Midstream, LLC to the United States' Motion for Modification of the Amended Scheduling Order (Dkt. 160) contains factual assertions regarding Defendants' counsels' conversations with Mr. Beckman at the site visit to the subject property on October 23, 2012 and

**C. Defendants Have Failed to Establish the Basis for Their Overly Broad Request for Documents in the Possession of Counsel for the United States, Mr. Beckman, and Geostock Relating to this Litigation.**

If the Court were to determine Defendants' Motion to Compel the Production of documents on the merits, that request should be denied as well.  Defendants provide no support for their extremely broad request for a variety of work product-protected documents that constitute "the files and records of Plaintiff, Mr. Krainak, Mr. Beckman, IGC and Geostock that relate to this litigation, including any communications with counsel for the United States contained within those files."  Memorandum in Support of Motion to Compel at 5.  The breadth of the categories of documents that Defendants seek is apparent from the Rule 45 Subpoena that Defendants' counsel sent to Mr. Krainak on September 6, 2013. *See, supra*, at 4-5.  Defendants assert that work product protection has been waived as to all of these records, apparently because of the limited information provided by Mr. Krainak in his declaration. *Id.*

Defendants simply overreach by asserting that work product protection has been waived as to Mr. Beckman, IGC, and Geostock, apparently because of the limited information provided by Mr. Krainak in his deposition.  The Court should recognize Defendants' transparent attempt to conduct wholesale discovery of the United States' work product with respect to these experts and deny their request to compel production of these documents.

1. The Documents that Defendants Seek are Protected Work Product.

The Federal Rules of Civil Procedure specify the limits on discovery that a party may conduct with respect to experts retained by a party.  Fed. R. Civ. P. 26(b)(4)(B) provides that the protections for work product under Rules 26(b)(3)(A) and (B) protect drafts of expert reports,

---

conversations the following day, all unsupported by sworn testimony.  Response at 4-5.  If the Court grants the Motion to Compel, the United States would arguably be just as entitled to take the Deposition of Counsel for Defendants to probe these factual assertions made in their briefs.

regardless of the form in which the draft is recorded.  Fed. R. Civ. P. 26(b)(4)(C) provides that

the attorney work product provisions of Rules 26(b)(3)(A) and (B) protect communications

between the party's attorney and any witness required to provide a report under Rule

26(a)(2)(B), regardless of the form of the communications, with three limited exceptions.

Defendants' description of the broad categories of documents that they seek as described in their

Motion to Compel reveals that almost all of the information that they seek is protected work

product.  The drafts of reports and marked up versions of expert reports prepared by Mr.

Beckman, IGC, or Geostock are specifically protected as work product under Rule 26(b)(4)(B).

To the extent that the marked up drafts reflect comments by counsel for the United States, they

reflect opinion work product meriting even greater protection from discovery, as described

below.  Most of the documents reflecting communications between counsel for the United States

and with the experts sought by Defendants are likewise protected as work product under Rule

26(b)(4)(C), except to the extent they fall into one of the three exceptions to that rule.[6]  And the

internal communications among counsel for the United States sought by Defendants in their

subpoena are clearly opinion work product that should be protected, as described further below.

    2.   <u>Defendants Are Not Entitled to Discovery of Plaintiff's Opinion Work Product</u>.

Rule 26(b)(3)(A) provides that ordinarily a party may not discover documents and

tangible things that are prepared in anticipation of litigation or for trial by or for another party or

its representative.  But, subject to Rule 26(b)(4), those materials may be obtained only upon  a

showing that the party seeking discovery has substantial need for the materials to prepare its case

and that it is unable, without undue hardship, to obtain their substantial equivalent by other

---

[6]  To the extent that the United States or its experts have documents falling within the three exceptions under Rule 26(b)(4)(C) and they have not already been produced, those documents can be produced in conjunction with the depositions of those experts and the experts may be questioned about that information.

means.  Fed. R. Civ. P. 26(b)(3)(A)(ii); *Hodges, Grant & Kaufman v. IRS*, 768 F.2d 719, 721

(5th Cir. 1985).  Furthermore, Rule 26(b)(3)(B) provides that if the court orders discovery of

these materials, "it must protect against disclosure of the mental impressions, conclusions,

opinions, or legal theories of a party's attorney or other representative concerning the litigation."

The Fifth Circuit has noted that some courts have provided an almost absolute protection for

such "opinion work product," and that an even higher showing is required for production of such

materials.  *In re International Securities Systems & Controls Corp.*, 693 F.2d at 1240; *see also*

*Shelton*, 805 F.2d at 1328, citing *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) ("attorney's

opinion work product enjoys nearly absolute immunity and can be discovered in very rare and

extraordinary circumstances").  "[O]pposing counsel may rarely, if ever, use discovery

mechanisms to obtain the research, analysis of legal theories, mental impressions, and notes of

an attorney acting on behalf of his client in anticipation of litigation."  *FTC v. U.S. Grant*

*Resources, LLC*, 2004 WL 1444951, at *11.  Furthermore, there exists no subject matter waiver

for the kind of work product defined in Fed. R. Civ. P. 26(b)(3) as "opinion work product."  *Id*.

Although Defendants had not promulgated specific requests for documents through a

subpoena at the time they filed the motion, it appears that much of the discovery that they seek

would contain the opinion work product of counsel for the United States.  Many of the internal

communications among counsel for the United States and with the experts relating to the experts'

work would contain mental impressions, conclusions, opinions, and legal theories relating to this

case.  Defendants are, in effect, seeking to obtain virtually all of the United States' work product

in order to prepare their own case for trial.  Defendants made no special showing as to why they

should be allowed to obtain such opinion work product, and its discovery should not be allowed.

3. <u>Defendants Have Not Shown Substantial Need and Undue Hardship as Required to Enable Them to Obtain Discovery of the Other Work Product-Protected Documents of the United States</u>.

In their Memorandum in Support of the Motion to Compel, Defendants assert that their substantial need for the United States' work product-protected materials is based on the fact that the United States is seeking an alteration of the scheduling order so that it can "redo" its expert discovery.  Furthermore, they claim that they cannot obtain the substantial equivalent by other means because the United States' request is based almost entirely on the alleged communications between Mr. Krainak, Mr. Beckman, and Geostock, and the "new opinions" held by Geostock. Memorandum in Support of the Motion to Compel at 6.

Defendants have failed to identify a substantial need for these materials or why they cannot, without undue hardship, obtain the substantial equivalent of the information they seek by other means, namely, through depositions of Mr. Beckman and Geostock.  Defendants have made no showing as to why these documents are relevant to the valuation of the property at issue in this case.  And as previously stated, the United States' Motion for Modification of the Amended Scheduling Order is not based on communications between counsel for the United States and its experts Beckman and Geostock, but is based on Mr. Beckman's disavowal of his expert opinion on an issue of key importance to the valuation of the property at issue in this case. Mr. Beckman provided the explanation for his recanting of his expert opinion in his deposition on July 13, 2013.  Mr. Beckman also described in his deposition the assurances that he provided to counsel for the United States that he did not have a conflict based on his prior work for PLM. If Defendants have further questions for Mr. Beckman regarding the reasons why he recanted his testimony, they can ask them in his upcoming deposition.  Furthermore, Geostock is an expert

17

who provided a rebuttal report for the United States; Defendants may take the deposition of

Geostock representatives regarding their expert opinion.  Defendants have not clearly explained

why they have substantial need for all of the work product-protected information in the

possession of the United States, Mr. Beckman, IGC, and Geostock in order to address Mr.

Beckman's disavowal of his expert opinion or why they cannot obtain it through depositions of

Mr. Beckman and Geostock.

The Fifth Circuit has stated that it "agree[s] with the general proposition that discovery of

work product will be denied if a party can obtain the information he seeks by deposition." *In re*

*International Securities Systems & Controls Corp.*, 693 F.2d at 1240.  As in that case,

Defendants here may be able to demonstrate undue hardship if witnesses cannot recall the events

in question or are unavailable.  *Id.*  The Fifth Circuit noted in that case that the party seeking

discovery of attorney work product had taken only one deposition, and the Court believed a more

particularized showing must be made before production of attorney work product may be

ordered.  *Id.* at 1240-41.  Thus, Defendants have failed to make the requisite showing of

substantial need and inability to obtain the substantial equivalent of the information that they

seek by taking the depositions of Mr. Beckman and Geostock.

     4.  <u>Plaintiff's counsel Mr. Krainak did not commit a broad waiver of the work product protection that would allow defendants to conduct the broad discovery of the United States' work product that they seek</u>.

Defendants assert that the United States has intentionally put work product protected

communications at issue in this case in the declaration that Mr. Krainak submitted in support of

the Motion for Modification of the Amended Scheduling Order.  Defendants claim that they

cannot effectively rebut his representations without all of the files, records, and communications

between the United States and its experts, and that they cannot obtain the information from any

18

other source.  Memorandum in Support of Motion to Compel at 6-7.  Defendants seriously

overstate the content of Mr. Krainak's brief declaration, and attempt to use it to make a broad

play for all of the United States' protected communications with its experts and among counsel

for the United States with respect to those experts.  That effort should be rejected.

The Fifth Circuit has held that it agrees with the general proposition that discovery of

work product will be denied if a party can obtain the information he seeks by deposition.  *In re*

*International Systems & Controls Corp.*, 693 F.2d at 1240, *citing* 8 C. Wright & A. Miller,

Federal Practice and Procedure § 2025 n. 72 (1970).  Defendants have, through discovery of Mr.

Beckman, been able to conduct an inquiry into the facts and information related to Mr.

Beckman's statement to counsel for the United States that he had no conflict that precluded him

from providing an expert opinion on behalf of the United States, and his subsequent disavowal of

his expert opinion.  As previously explained, Mr. Krainak's declaration largely reiterated

statements made under oath by Mr. Beckman or provided information found in other sources

available to Defendants.  There is no other work product protected information that was used by

the United States in support of its motion to modify the scheduling order as to which Defendants

have been unable to obtain discovery.  Plaintiffs are not, as Defendants assert, using the assertion

of work product privilege as both a sword and a shield.  The United States has allowed

appropriate deposition queries on these issues of relevance to their Motion for Modification of

the Amended Scheduling Order.[7]

---

[7] None of the cases that Defendants cite in their brief support the notion that the limited representations made by Mr.
Krainak, which followed deposition testimony by a witness on the same topic, result in a comprehensive waiver of
work product protections as to all materials relating to a party's experts.  Furthermore, in the few cases cited by
Defendants allowing for discovery as to either attorney-client privileged or work product protected information,
Courts have narrowly limited the scope of the discovery that the party seeking information could obtain.  In *Nguyen*
*v. Excel Corp.*, while the Court held that plaintiffs had made the requisite showing under *Shelton* to enable them to
take the deposition of defendant's counsel (which Defendants here have not), the Court specifically limited the
topics on which plaintiff's counsel could be deposed, and stated that inquiries would not be allowed into the

Furthermore, even if there were a limited waiver here, the subject matter of the waiver of work product should be narrowly construed.  *Hunter v. Copeland*, No. Civ.A. 03-2584, 2004 WL 2472487, at *2 (E.D. La. Nov. 1, 2004).   Thus, to the extent that Defendants question Mr. Beckman on communications with counsel for the United States, questioning should be limited to the specific issues of discussion of conflicts and Mr. Beckman's disavowal of his expert opinion discussed in Mr. Krainak's declaration.   Furthermore, Courts have concluded that no subject matter waiver exists for the kind of work product defined in Fed. R. Civ. P. 26(b)(3) as "the mental impressions, conclusions, opinions, or legal theories of an attorney or ther representative of a party concerning the litigation", *i.e.*, opinion work product.  *FTC v. U.S. Grant Resources, LLC*, 2004 WL 1444951 at *11.  Defendants' claims that they should be allowed to undertake wholesale inquiries into the United States' work product protected communications with and relating to its experts should be rejected.

## IV. Conclusion

Defendants' Motion to Compel is premature where no subpoena to obtain Mr. Krainak's deposition or documents was pending at the time that the motion was filed and the motion briefed by the parties.  Furthermore, even if ripe, Defendants' Motion should be denied. Defendants are attempting to rely on limited representations by Mr. Krainak that merely corroborated statements already made under oath by Mr. Beckman to seek permission to undertake full-scale discovery of the United States' work product with respect to its experts in this case.  Defendants have failed to establish the criteria justifying the deposition of opposing

---

attorney's opinions.  197 F.3d at 210.  Similarly, in *Rainbow Investors Group*, another case distinguishable from this one (*see supra* note 4), the Court limited discovery to unprivileged facts underlying the sales transaction that plaintiff's counsel had negotiated with a third party that was crucial to defendants' counterclaims and defenses.   The court did not allow wide-ranging discovery into all of the attorney's work product. 168 F.R.D. 34, 37-38.

counsel.  In addition, defendants have failed to establish their right to a wholesale production of documents constituting the United States' work product relating to its expert witnesses in this case under Fed. R. Civ. P. 26(b)(3)(A) and (B).

DATED: September 09, 2013                     Respectfully submitted,

                                              UNITED STATES OF AMERICA
                                              J. WALTER GREEN
                                              ACTING UNITED STATES ATTORNEY


                                              s/John J. Gaupp
                                              JOHN J. GAUPP, LBN 14976
                                              Assistant United States Attorney
                                              777 Florida Street, Suite 208
                                              Baton Rouge, Louisiana  70801
                                              Telephone:     (225) 389-0443
                                              Facsimile:     (225) 389-0685
                                              E-Mail:  john.gaupp@usdoj.gov


                                              s/  Justin A. Okun
                                              JUSTIN A. OKUN
                                              Trial Attorney
                                              Environment & Natural Resources Division
                                              U.S. Department of Justice
                                              Post Office Box 7611 – Ben Franklin Station
                                              Washington, D. C.  20044
                                              Telephone:     (202) 305-0467
                                              Facsimile:     (202) 514-8865
                                              E-Mail: Justin.Okun@usdoj.gov
                                              Attorneys for Plaintiff, United States of America

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all CM/ECF participants.  I also certify that a copy was mailed postage prepaid to all persons identified below by U.S. Mail on September 9, 2013.

Boardwalk Louisiana Midstream, LLC
(F/K/A PL Midstream, LLC)
c/o Kimberli Deagen Loessin, Esq.
Stephen I. Adler, Esq.
Barron & Adler, LLP
1421 Heights Blvd.
Houston, TX 77002

Boardwalk Louisiana Midstream, LLC
c/o Boardwalk Pipeline Partners, LP
Attn:  Michael E. McMahon, Genl. Counsel
9 Greenway Plaza, Suite 2800
Houston, TX 77046

Iberville Bank
c/o Calvin W. Wilbert, Jr.
Executive Vice President
24305 Eden Street
Plaquemine, Louisiana  70764

Sheriff & Ex-Officio Tax Collector
Iberville Parish
P.O. Box 697
Plaquemine, Louisiana  70765

Kearney-National, Inc.
The Prentice-Hall Corporation System, Inc.
Registered Agent
2711 Centerville Road, Suite 400
Wilmington, Delaware

Hibernia National Bank
Renamed Capital One, National Association
1680 Capital One Drive
McLean, Virginia  22102

Department of Revenue and Taxation
Adrienne D. Quillen, Esq.
Legal Division
Louisiana Department of Revenue
617 North Third Street
P.O. Box 4064
Baton Rouge, Louisiana  70821-4064

Honeywell International, Inc.
Corporation Service Company
Registered Agent
320 Somerulos Street
Baton Rouge, Louisiana  70802-6129

s/ Justin Okun
JUSTIN OKUN