UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

9.345 ACRES OF LAND, MORE OR LESS, SITUATED IN IBERVILLE PARISH, STATE OF LOUISIANA, ET AL

CIVIL ACTION

NUMBER 11-803-JJB-SCR

**RULING ON MOTIONS TO COMPEL DISCOVERY**
**and**
**RULING ON MOTION FOR PROTECTIVE ORDER**
**and**
**ORDER VACATING ORDER GRANTING LEAVE TO FILE SUR-REPLY**
**AND DENYING MOTION FOR LEAVE TO FILE SUR-REPLY**

Before the court is The United States' Motion to Compel Defendant PL Midstream, LLC, to Produce Information Regarding the Equity Sale of PL Midstream, LLC, and Current or Past Leases. Record document number 93. The motion is opposed.[1] In response to the plaintiff's motion defendant PL Midstream, LLC also filed a Motion for a Protective Order. Record document number 103. This motion is opposed.[2] Also before the court is The United States' Motion to Compel Defendant A. Wilbert's Sons, LLC to Produce Documents Regarding Current or Past Leases. Record document number

---

[1] Record document number 101. The United States also filed a reply memorandum. Record document number 118.

[2] Record document number 118.

95.   This motion is opposed.[3]

For the reasons which follow the motions to compel are denied and the Motion for a Protective Order is granted.

### The Parties' Arguments

This case involves the taking of a certain property, Tract 101, which includes an underground salt cavern (Cavern 102) in the Bayou Choctaw Salt Dome in Iberville Parish, Louisiana.  At issue in this case is the determination of the fair market value of the property taken.

Tract 101 is owned in part by defendant A. Wilbert's Sons, LLC ("AWS").  At the time the complaint was filed, PL Midstream, LLC ("PLM") was the lessee of AWS's interest in Tract 101.  PLM was sold at an auction sale to Boardwalk Pipeline Partners after this complaint was filed.  Through this sale, Boardwalk acquired PLM's lease interest in the subject property, along with additional assets at another salt dome storage facility.  PLM believes that consideration of the sale price may assist in determining the fair market value of Tract 101.

Plaintiff moved to compel defendant PLM to produce documents and information regarding (1) the equity sale of PLM and (2) past

---

[3] Record document number 102. The United States also filed a reply memorandum.  Record document number 117.

2

and current leases involving the subject and surrounding property.[4] In a separate motion, the plaintiff also moved to compel AWS to produce similar information and documents concerning its interest leased to PLM. Plaintiff asserted that the stipulated protective order already in effect prevents the release of confidential information to third parties.

With respect to the requested equity sale discovery, PLM produced all documents initially provided to prospective purchasers that were part of the Sales Data Room, supplemental documents requested by buyers in the auction and due diligence process which were added to the Sales Data Room, and the Equity Purchase Agreement between PLM and Boardwalk which contains the details of the final sales transaction. The contested discovery involves other documents generated during the negotiations process with prospective buyers, including Boardwalk. PLM objected to this production, arguing that evidence of unaccepted offers to purchase land is irrelevant to the determination of just compensation and that the harm production would cause outweighs the possible benefit to the plaintiff.

PLM argued that its responsive production was sufficient and disclosure confidential documents concerning (1) the negotiations and specific bids from third-parties whose offers were not accepted and (2) the details of the negotiations that led to the final

---

[4] Record document number 61-2, Exhibit A.

3

agreement would be harmful to both PLM and the prospective buyers, and would undermine the secrecy necessary for success of a private corporate auctions.  PLM asserted that unaccepted offers made to purchase land are irrelevant to prove value or just compensation, thus negotiations leading to those offers are equally irrelevant.  PLM also noted that the previously entered protective order does not protect the confidential negotiation documents from public record requests or prevent the plaintiff's consultants and experts, who may be associated with PLM's competitors, from accessing this information.

With respect to outstanding discovery concerning the leased interest, the plaintiff argued that PLM and AWS should be compelled to produce the documents related to the amendment or replacement of the 1990 lease, including any new lease for the subject property and Cavern 102, as well as any audits or other documents related to the calculation of rental payments under any lease concerning the subject property.  Plaintiff argued that documents evidencing the course of conduct of the parties to the prior lease in executing their obligations under that lease are necessary to understand the background and market considerations that influenced the rent and/or royalty determinations.

Both PLM and AWS argued that information concerning the lease negotiations are irrelevant to any issue in this condemnation action.  Defendants asserted that the negotiation information is

contained in over 10,000-20,000 documents, making production unreasonable and overly burdensome, especially given the little, if any, substantive value these would have to the fair market value determination.  Defendants also argued that the lease negotiation involved the resolution of a different legal matter concerning AWS and PLM and an attempted resolution of issues raised by the current condemnation action.  Thus, many of these requested documents reference information that is protected by the attorney-client privilege and are protected work-product.

## Analysis

A review of the record and the parties arguments shows that the plaintiff has failed to establish that the benefit of producing the requested information and documents would outweigh the burden of production and the prejudice that would be suffered by AWS, PLM, Boardwalk and the other bidders involved in the auction sale of PLM. The extensive documentation that has been produced provides the plaintiff with the same facts that bidders used to determine a fair market value for the property.  Any additional information that may have been exchanged during the negotiation process was specific to a particular bidder's interests and was not included in the Sales Data Room to be publicized to the other participants of the sale.  Thus, this additional information do not likely reflect the fair market value for the purpose of this case.

Plaintiff's argument that specific bidders' motivations and

bids would assist in the appraisal process is unpersuasive. As discussed by PLM, unaccepted offers are not reliable evidence of market value. Although an appraisal requires a review of the typical motivations of buyers and sellers, this information can be determined without production of the specific motivations of bidders involved in the private auction process. Through this request, the plaintiff is seeking a shortcut to this determination which would lead to skewed result since the information is limited to the participants in this one auction. PLM's discussion of the private auction process showed that any minimal benefit this information could provide to the plaintiff is heavily outweighed by the need to protect the interests of the auction participants as discussed by PLM.

Plaintiff also argued that Boardwalk's motivation in acquiring the subject property is relevant because it will show how the property at issue in the condemnation proceeding was valued compared to the rest of the property that was part of the sale. Boardwalk's valuation of the various assets gained from its purchase of PLM can be more directly obtained, if at all, through other discovery methods, e.g. a Rule 30(b)(6), Fed.R.Civ.P., deposition. Thus, the benefit of disclosure of protected documents is not outweighed by the prejudice that would be incurred.

Plaintiff has also failed to demonstrate that discovery concerning the lease negotiations are relevant to the fair market

value issue. AWS and PLM have asserted that the negotiations were based, in part, on other pending legal matters as well as the current condemnation proceeding. Thus, the lease negotiations are not indicative of the fair market value of the property in light of these unique factors. Defendants have shown that the burden of this extensive production coupled with the interwoven privileged information outweighs any benefit to the plaintiff.

As to PLM's Motion for Protective Order, consideration of the parties' arguments supports finding that there is good cause to grant the motion. Therefore, the withheld sales negotiation information and documents shall not be discoverable in this case.

Accordingly, The United States' Motion to Compel Defendant PL Midstream, LLC, to Produce Information Regarding the Equity Sale of PL Midstream, LLC, and Current or Past Leases is denied. The United States' Motion to Compel Defendant A. Wilbert's Sons, LLC to Produce Documents Regarding Current or Past Leases is also denied. Defendant PL Midstream, LLC's Motion for a Protective Order is granted. The motions to compel, although denied, were substantially justified. Pursuant to Rule 37(a)(5)(B), Fed.R.Civ.P., the parties shall bear their respective costs

Furthermore, since the court has determined that the motion to compel as to PLM can be decided without additional briefing;

IT IS ORDERED that the ORDER[5] granting Defendant Boardwalk Louisiana Midstream, LLC's f/k/a PL Midstream, LLC, Amended Motion for Leave to File Sur-reply to Docket No. 118 is vacated and the motion[6] is now denied.

Baton Rouge, Louisiana, September 30, 2013.

*signature: Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[5] Record document number 180.

[6] Record document number 121.