UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

9.345 ACRES OF LAND, MORE OR LESS,
SITUATED IN IBERVILLE PARISH,
STATE OF LOUISIANA, AND
SIDNEY VINCENT ARBOUR, III, *ET AL.*

CIVIL ACTION

NO. 11-803-JJB-EWD

**RULING ON LINDSAY GOLDBERG, LLC'S MOTION FOR PROTECTIVE ORDER FROM THE UNITED STATES' SUBPOENA**

Before the court is a Motion for Protective Order from the United States' Subpoena (the "Motion for Protective Order")[1] filed by Lindsay Goldberg, LLC ("Lindsay Goldberg"). The United States of America (the "United States" or "Plaintiff") has filed an opposition.[2] By its Motion for Protective Order, Lindsay Goldberg requests that this court: (1) set the deadline for responding to the United States' Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena") on November 16, 2016; and (2) sustain its objections to Subpoena requests 35 and 38-47.

Following this court's October 31, 2016 Notice and Order[3] requiring the parties to confer and attempt to resolve the issues raised in the Motion for Protective Order, Lindsay Goldberg submitted a Revised Rule 26(c) Certification (the "Revised Certification")[4] wherein it reported that the parties had agreed "to a production date of November 16, 2016, along with certain search

---

[1] R. Doc. 369.

[2] R. Doc. 376. The United States filed its opposition to the Motion for Protective Order under seal because it attached certain documents previously marked as "confidential" as exhibits to the opposition.

[3] R. Doc. 385.

[4] R. Doc. 388.

1

terms and other search criteria."[5]  Additionally, per the Revised Certification, the parties were able to resolve their disagreement with regard to Subpoena request 35.[6]  However, the parties were unable to resolve Lindsay Goldberg's objections to Subpoena requests 38-47 and Lindsay Goldberg continues to seek protection from this court regarding those requests.[7]

For the reasons set forth herein, Lindsay Goldberg's Motion for Protective Order is **GRANTED IN PART AND DENIED IN PART**.

## I.     Background

This suit is a federal condemnation action, in which the United States condemned property identified as Tract 101 and Tract 101E located in Iberville Parish, Louisiana for the Strategic Petroleum Reserve by declaration of taking on November 30, 2011.[8]  A map of the property taken (included as Schedule D attached to the United States' Complaint in Condemnation) reflects the property taken as Bayou Choctaw Facility, Dome Site Cavern 102[9] (the "Property").  The sole issue to be determined is just compensation for the taking.[10]

Over 160 individuals or entities (collectively referred to as the "Wilbert Parties" or the "Landowner Defendants") own the Property taken.  At the time of the taking, PL Midstream LLC

---

[5] R. Doc. 388, p. 2.

[6] R. Doc. 388, p. 2. Subpoena request 35 is a "catch-all" provision that seeks "…all documents relating to Cavern 102." Lindsay Goldberg states in its Revised Certification its objections to this request have been resolved and explains that "[t]hrough prior negotiations regarding the search terms, the parties were able to appropriately limit this request." R. Doc. 388, p. 2.

[7] R. Doc. 388, pp. 2-4.

[8] *See*, R. Doc. 1-1 & 1-2. Tract 101 is identified as "[t]he fee simple title to the land, however, subject to existing easements for public roads and highways, public utilities, railroads and pipelines." R. Doc. 1-3. Tract 101E is described as a "non-exclusive and assignable temporary easement" to be used "as a preexisting access route and right-of-way…." R. Doc. 1-3.  *See also*, R. Doc. 8.

[9] R. Doc. 1-4.

[10] *See*, Status Report, R. Doc. 41.

("PLM") was the lessee of the Property.[11] PL Logistics, LLC was the parent company of PLM.[12] Following the taking, PLM "dividended to PL Logistics, LLC the subject condemnation and the compensation therefrom along with any remaining interest in the condemned property."[13] PL Logistics, LLC is owned in part by Lindsay Goldberg. On October 1, 2012, PLM was sold to Boardwalk Acquisition Company, LLC, who then changed its name to Boardwalk Louisiana Midstream, LLC ("Boardwalk").[14]

On August 24, 2016, the United States sent the Subpoena to Lindsay Goldberg.[15] The Subpoena requests 47 categories/descriptions of documents to be produced.[16] Lindsay Goldberg objected to Subpoena requests 35 and 38 through 47 and sought an extension until November 16, 2016 to respond to the Subpoena. As explained above, the parties were thereafter able to agree to a production date of November 16, 2016 and to resolve Lindsay Goldberg's objections to Subpoena request 35.[17]

---

[11] *See*, R. Doc. 2-5, at 1-19.

[12] R. Doc. 366 (Defendants' Rule 71.1(h) Motion to Exclude Certain Prejudicial Post Date of Taking Evidence), p. 1, n. 1.

[13] R. Doc. 366, p. 1, n. 1.

[14] *See*, R. Doc. 366, p. 1, n. 1. *See also*, R. Doc. 369-1, p. 2 (Lindsay Goldberg, LLC's Motion for Protective Order from the United States' Subpoena); R. Doc. 98 (Amended Complaint in Condemnation). Boardwalk Louisiana Midstream, LLC f/k/a PL Midstream, LLC and PL Logistics, LLC (the "Tenant Defendants") and the Landowner Defendants (collectively, "Defendant") have explained that "this litigation has proceeded with some confusion and muddling of the different PetroLogistics and Boardwalk entities. In an effort to address this issue, counsel for Defendants and counsel for Plaintiff have conferred, and counsel for Plaintiff has indicated it will add PL Logistics, LLC to the case as a defendant in short order." R. Doc. 366, p. 1, n. 1.

[15] R. Doc. 369-2. Counsel for both the Tenant Defendants and Lindsay Goldberg "accepted service on behalf of Lindsay Goldberg as a courtesy to Plaintiff." R. Doc. 369-1, p. 2.

[16] R. Doc. 369-2.

[17] Additionally, "[b]ecause over 80,000 pages of documents have previously been produced by Tenant Defendants that are currently loaded into a database, Lindsay Goldberg proposed having its 18 GBs of data loaded into a database and then run in a cross check to remove duplicative documents." R. Doc. 369-1, p. 3. The United States expressed concern about the "de-duplication" process described by Lindsay Goldberg in its September 13, 2016 correspondence. *See*, R. Docs. 376-3 & 376-4. Specifically, the United States asserted that the fact that a particular document was in Lindsay Goldberg's possession could have relevance and may be germane to the deposition of Lindsay Goldberg. R. Doc. 369-6, p. 2. Despite this apparent disagreement, Lindsay Goldberg did not raise this issue in its Revised Certification. Moreover, Lindsay Goldberg has explained in brief that "the comparison is not to prevent the production of any documents by *both* Tenant Defendants and Lindsay Goldberg, but to lessen the amount of documents that must

## II. Law and Analysis

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.,* 134 F.3d 302, 306 (5th Cir. 1998).

Fed. R. Civ. P. 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). On timely motion, the court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The moving party has the burden of demonstrating that compliance with the

---

be independently reviewed and evaluated prior to production." R. Doc. 369-1, p. 5. Emphasis added. Based on this assertion, the court understands that Lindsay Goldberg intends to produce documents duplicative of those previously produced by the Tenant Defendants, and that the "comparison" or "de-duplication" process is intended to cull the number of documents that must be reviewed by Lindsay Goldberg's counsel prior to production.

4

subpoena would be unduly burdensome. *See*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). To determine whether the third party subpoena presents an undue burden, a court considers the relevance of the information requested, the need for the information, the breadth of the requests, the time period covered by the request, the particularity with which the requested documents are described, and the burden imposed. *Id*. (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). The court may also consider the expense and inconvenience caused to the third party, and may find undue burden when the subpoena is facially overbroad. *Id*.

### B. Objections

Lindsay Goldberg has objected to certain of Plaintiff's requests with objections based on undue burden, relevancy, and privilege. The objected-to requests for which Lindsay Goldberg still seeks protection are as follows:[18]

#### i. Requests Re: Transition Services Agreement

Request No. 38: All invoices relating to the Transition Services Agreement by and between PL Midstream and PL Logistics, LLC, dated Oct. 1, 2012.

Objection: relevancy. "The sole issue in this eminent domain matter is the proper amount of just compensation or the property taken, as of the date of the taking, November 30, 2011. Invoices on an ancillary and internal agreement related to the sale of PL Midstream to Boardwalk almost a year after the taking have no bearing on any issue in this dispute and are outside the scope of discovery."

Request No. 39: All communications relating to the Transition Services Agreement by and between PL Midstream and PL Logistics, LLC, dated October 1, 2012.

Objection: relevancy. "The sole issue in this eminent domain matter is the proper amount of just compensation or the property taken, as of the date of the taking, November 30, 2011. Communications

---

[18] In its Motion for Protective Order, Lindsay Goldberg simply copies its objections verbatim without any additional explanation.

5

>about an ancillary and internal agreement related to the sale of PL Midstream to Boardwalk almost a year after the taking have no bearing on any issue in this dispute and are outside the scope of discovery."

Plaintiff explains that the Transition Services Agreement (the "TSA"), requires Boardwalk/PLM to maintain "Books and Records related to the Well 102 Claim or reasonably likely to be necessary for Recipient [PL Logistics] to pursue the Well 102 Claim…" but Boardwalk/PLM has objected on the grounds that PL Logistics has custody of the requested documents.  The United States asserts that the requested communications and invoices "should establish that Boardwalk/PLM, not PL Logistics, has custody of the documents relevant to this litigation."[19]  However, to the extent Plaintiff seeks to establish that Boardwalk/PLM was required to be the custodian of certain documents, it appears that the TSA itself is evidence of that.  Further, Plaintiff fails to explain how documents from Lindsay Goldberg, an owner of PL Logistics, would establish that an entity other than PL Logistics has relevant documents.  "[O]nce a relevancy objection has been raised, the party seeking the discovery must demonstrate that the request is within the scope of discovery." *Babin v. Breaux*, 2012 WL 83672, at * 1 (M.D. La. Jan. 11, 2012).  Without some further explanation by the United States, the court does not see how invoices and communications related to the TSA are relevant and proportional to the needs of the case.  Accordingly, Lindsay Goldberg's objections to Subpoena requests 38 and 39 are SUSTAINED.

---

[19] R. Doc. 376, p. 8.  The United States further asserts that Boardwalk/PLM has informed the United States that it plans to file a motion to dismiss shortly and that the requested documents are relevant "because they likely demonstrate that (1) Boardwalk/PLM has possession of documents and information subject to discovery and (2) the United States accordingly will suffer prejudice if Boardwalk/PLM is dismissed." R. Doc. 376, p. 8.  Assuming Boardwalk/PLM has relevant and discoverable information, Plaintiff does not explain how dismissal of claims against Boardwalk/PLM would preclude its ability to obtain that information.

### ii. Requests Re: Consulting Agreement with Allen Kirkley

Request No. 40: All communications with Allen Kirkley relating to the Consulting Agreement by and between Allen Kirkley and PL Logistics, LLC, dated October 1, 2012.

Objection: relevancy. "The sole issue in this eminent domain matter is the proper amount of just compensation or the property taken, as of the date of the taking, November 30, 2011. Communications about an ancillary and internal agreement related to the sale of PL Midstream to Boardwalk almost a year after the taking have no bearing on any issue in this dispute and are outside the scope of discovery."

The United States explains that the Consulting Agreement between Allen Kirkley and PL Logistics requires PL Logistics to pay Kirkley 2.5% of its proceeds from this litigation and therefore the requested information is "highly relevant to test the credibility of Kirkley, a witness in this case."[20] There is not any further explanation of who Mr. Kirkley is in the Motion for Protective Order; however, Lindsay Goldberg explains in the Revised Certification that he is "a principle of PL Midstream."[21] To the extent the United States seeks to challenge Mr. Kirkley's credibility, the court finds that the United States may do so based on the terms of the Consulting Agreement itself. The United States has not explained why it needs additional communications between Mr. Kirkley and PL Logistics, LLC to challenge Mr. Kirkley's credibility based on the fact that he was paid pursuant to the terms of the Consulting Agreement. Accordingly, Lindsay Goldberg's objection to Subpoena request number 40 is SUSTAINED.

### iii. Requests Re: Interest in Litigation

Request No. 41: All contracts, agreements, and understandings relating to any interest by you and/or PL Logistics, LLC in the outcome of this litigation.

---

[20] R. Doc. 376, p. 9.

[21] R. Doc. 388, p. 3. Mr. Kirkley did verify PL Logistics' Interrogatory responses, explaining that he is "the former President of PL Olefins, LLC and PetroLogistics Louisiana Midstream, LLC…." R. Doc. 365-1.

7

>Objection: (a) relevancy. "Agreements 'relating to any interest…in the outcome of th[e] litigation' have no bearing on any issue in this dispute…."; (b) work product, attorney client, and/or joint defense privilege. "Plaintiff could only have two reasons to make such inquiry: (1) to determine who owns the litigated claims, and/or (2) to determine the value Lindsay Goldberg, PL Logistics, LLC, and/or Boardwalk Louisiana Midstream, LLC placed on the litigation/claim and how they valued said claim (which would include evaluation of risk, cost, and likelihood of success which make up the bedrock of protected trial strategy). As to the first potential reason, Plaintiff has made clear that it will only recognize Boardwalk Louisiana Midstream, LLC as the proper Defendant due to its stated reliance on the Assignment of Claims Act – thus Request 41 is irrelevant to any issue. As to the second potential reason, any internal valuation of the litigation/claim is subject to the attorney/client and work product privilege."
>
>Request No. 42: All documents relating to any assignment, sale, disposition, or transfer of PL Logistics, LLC's interest in this litigation.
>
>Objection: same as Request No. 41.
>
>Request No. 43: All documents relating to any assignment, sale, disposition, or transfer of your interest in this litigation.
>
>Objection: same as Request No. 41.
>
>Request No. 44: All documents relating to PL Logistics, LLC's interest in this litigation as collateral for a loan or other obligation.
>
>Objection: same as Request No. 41.
>
>Request No. 45: All documents relating to your interest in this litigation as collateral for a loan or other obligation.
>
>Objection: same as Request No. 41.
>
>Request No. 46: All documents relating to the decision not to sell, transfer, and/or convey any interest in this litigation to Boardwalk.
>
>Objection: same as Request No. 41.

Plaintiff argues that these requests are relevant because it has an obligation under the federal rules to determine which parties have a financial interest in this case. *See*, Fed. R. Civ. P. 71.1(c)(3) ("When the action commences, the plaintiff need join as defendants only those persons who have

8

a claim or interest in the property and whose names are then known. But before any hearing on compensation, the plaintiff must add as defendants all those persons who have or claim an interest and whose names have become known or can be found by a reasonably diligent search of the records, considering both the property's character and value and the interests to be acquired. All others may be made defendants under the designation 'Unknown Owners.'"). Plaintiff further asserts that the requested information is relevant because Boardwalk/PLM has stated it is <u>not</u> a proper party and intends to file a motion to dismiss. Accordingly, "[t]he identity of the proper parties and their interest in this litigation…remains very much at issue in this case."[22] Both based on Fed. R. Civ. P. 71.1 as well as the issue of Boardwalk's potential motion to dismiss, the court agrees that these requests seek relevant information. Accordingly, Lindsay Goldberg's request to sustain its objection to Subpoena request numbers 41-46 is DENIED.[23]

### iv. Request Re: Communications with Boardwalk

> <u>Request No. 47</u>: All communications with Boardwalk relating to this litigation.
>
> Objection: work product, attorney/client, and/or joint defense privilege. "Although Lindsay Goldberg is not currently a defendant in this case, Lindsay Goldberg is an owner of PL Logistics, LLC, a soon to be defendant, and thus Boardwalk, PL Logistics, LLC, and Lindsay Goldberg all share a common legal interest in this case."

The Fifth Circuit recognizes a "common legal interest" extension of the attorney client privilege in two situations: "(1) communications between co-defendants in actual litigation and their counsel; and (2) communications between *potential* co-defendants and their counsel." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Because it is an extension of the

---

[22] R. Doc. 376, p. 9.

[23] The United States has not questioned Lindsay Goldberg's assertion that certain responsive documents may be privileged. However, and as discussed below, there is no indication that Lindsay Goldberg has yet produced a privilege log or otherwise identified specific documents which it contends are privileged.

9

attorney-client privilege, privileged communications must be confidential and made for the purpose of facilitating legal representation or the rendition of legal advice. *Id*. at 712 (discussing *Aiken v. Texas Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993)). For the privilege to apply "there must be a palpable threat of litigation at the time of the communication." *Id*. at 711. The communications must further a common interest. *Id*. at 711-712. The party asserting the privilege has the burden of demonstrating its applicability. *Id*. Further, blanket claims of privilege are disfavored. *Id*. at 713 (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 n. 16 (5th Cir. 1999) ("Blanket claims of privilege are disfavored."); *United States v. El Paso Co.*, 692 F.2d 530, 539 (5th Cir. 1982) ("The privilege must be specifically asserted with respect to particular documents.")).

The United States argues that the joint defense privilege does not apply because Request No. 47 seeks communications between third party Lindsay Goldberg on the one hand and third parties Boardwalk Acquisition Company, LLC and Boardwalk Pipeline Partners, LP on the other.[24] In the Subpoena, "Boardwalk" is defined as:

> Boardwalk Acquisition Company, LLC and Boardwalk Pipeline Partners, LP, and any of their current or former subsidiaries, parents, and/or affiliated companies, predecessors or successors to any such entities, and their agents, representatives, subsidiaries and affiliates, and all persons acting or purporting to act for or on their behalf, including present and former members, directors, officers and employees.[25]

In its Motion for Protective Order, Lindsey Goldberg explains that after PLM "dividended" its interest in the Property and condemnation proceeding to PL Logistics, PLM was sold to Boardwalk Acquisition Company, LLC "who changed its name to Boardwalk Louisiana Midstream, LLC."[26]

---

[24] R. Doc. 376, p. 10.

[25] R. Doc. 369-2.

[26] R. Doc. 369-1, p. 2.

On January 29, 2013, the United States filed an Amended Complaint to "reflect the correct name of defendant [PLM]" as "Boardwalk Louisiana Midstream, LLC, f/k/a PL Midstream, LLC."[27] Based on Plaintiff's Amended Complaint, Boardwalk Louisiana Midstream, LLC is a named defendant in this action. Lindsay Goldberg asserts that Boardwalk Louisiana Midstream was formerly known as Boardwalk Acquisition Company, LLC. The United States does not seek to contradict that assertion. As such, it would appear that Subpoena request number 47 seeks Lindsay Goldberg's communications with a defendant in this suit. Further, Defendants have represented that the parties have conferred and that PL Logistics, LLC will likely be added as a defendant in this suit.[28] PL Logistics is owned in part by Lindsay Goldberg.[29] Accordingly, it seems that communications between Lindsay Goldberg and Boardwalk could be classified as confidential communications in furtherance of a common interest for the purpose of facilitating legal representation or the rendering of legal advice. However, there is no indication that Lindsay Goldberg has produced a privilege log or otherwise identified the documents which it contends are privileged. As noted above, blanket assertions of privilege are disfavored and the party asserting the privilege bears the burden of demonstrating its applicability. Here, while some of Lindsay Goldberg's communications with Boardwalk may be privileged, it has not specified the documents to which it contends the privilege applies or otherwise met its burden of demonstrating the privilege's applicability. Accordingly, at this juncture, Lindsay Goldberg's request to sustain its blanket objection based on privilege to Subpoena request number 47 is DENIED without prejudice to Lindsay Goldberg's right to specifically identify privileged documents in a proper privilege log.

---

[27] R. Doc. 98.

[28] *See*, R. Doc. 366 p. 1, n. 1.

[29] R. Doc. 369-1, p. 2.

### C. Conclusion

For the reasons set forth herein, Lindsay Goldberg's Motion for Protective Order[30] is **GRANTED IN PART AND DENIED IN PART** as follows:

Lindsay Goldberg's objections to Subpoena requests 38 and 39 are **SUSTAINED**. Lindsay Goldberg is not required to produce documents responsive to Subpoena requests 38 and 39.

Lindsay Goldberg's objections to Subpoena request number 40 are **SUSTAINED**. Lindsay Goldberg is not required to produce documents responsive to Subpoena request number 40.

Lindsay Goldberg's request to sustain its objections to Subpoena request numbers 41-46 is **DENIED**. Lindsay Goldberg shall produce documents responsive to Subpoena requests 41-46 on a rolling basis to be complete by November 16, 2016.

Lindsay Goldberg's request to sustain its blanket objection based on privilege to Subpoena request number 47 is **DENIED WITHOUT PREJUDICE** to Lindsay Goldberg's right to specifically identify privileged documents in a proper privilege log.

Signed in Baton Rouge, Louisiana, on November 14, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] R. Doc. 369.